USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-13-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SARAH NOVIO,

       Plaintiff,      17 Civ. 5648 (RWS)

  -against-          OPINION

THE NEW YORK ACADEMY OF ART; NYAA
HOLDINGS, LLC; DAVID KRATZ; WADE
SCHUMAN; and MARGARET BOWLAND,

       Defendants.

------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiff

    THE HOWLEY LAW FIRM P.C.
    350 Fifth Avenue, 59th Floor
    New York, NY 10118
    By: John Howley


    Attorneys for Defendant Wade Schuman

    MORRISON COHEN LLP
    909 Third Avenue
    New York, NY 10022
    By: Keith A. Markel


    Attorneys for Defendants The New York
    Academy of Art; NYAA Holdings, LLC; David
    Kratz; and Margaret Bowland

    SCHLAM STONE & DOLAN LLP
    26 Broadway
    New York, NY 10004
    By: Richard H. Dolan
      Bradley J. Nash
      Hillary S. Zilz
      Joshua Wurtzel

**Sweet, D.J.**

Defendants the New York Academy of Art ("NYAA" or the "Academy"), NYAA Holdings, LLC ("NYAA Holdings"), David Kratz ("Kratz"), Wade Schuman ("Schuman"), and Margaret Bowland ("Bowland") (collectively, the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint ("Complaint") of Plaintiff Sarah Novio ("Novio" or the "Plaintiff"), in which she alleged claims of sex discrimination, sexual harassment, a hostile educational environment, unlawful retaliation, and breach of contract. Based on the facts and conclusions set forth below, the Defendants' motions to dismiss are granted in part, and denied in part.

## I.  **Prior Proceedings**

Plaintiff commenced this action on July 25, 2017, alleging sex discrimination, sexual harassment, a hostile educational environment, and unlawful retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and for breach of contract under New York State law, as set forth in the Complaint and as

set forth below. The instant motion was filed on October 3, 2017, and was argued and marked fully submitted on November 15, 2017.

## II. The Facts

The Complaint sets forth the following facts, which are assumed true for the purpose of this motion to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

The Plaintiff, Sarah Novio, is a former student and current alumna of Defendant NYAA. (Compl. ¶ 9.) The Plaintiff attended NYAA from September 2013 until May 2015, when she graduated with a Masters of Fine Arts degree. (Compl. ¶ 2.) The Plaintiff took courses from Defendant Schuman, an NYAA professor and Department Chairman, in 2014 and 2015, (Defs.' Br. Ex. A) during which time the Plaintiff found that Schuman's persistent sexual commentary in the classroom and inappropriate touching of female students created a hostile educational environment that interfered with the Plaintiff's education.[1] (Compl. ¶ 30.)

_____

[1] With their motion to dismiss, the Defendants have submitted a purported copy of the Plaintiff's schedule, which provides that the Plaintiff was enrolled in two classes with Schuman only in the spring of 2014, from January 1, 2014 to May 15, 2014. *See* Defs.' Br. Ex. A. However, when deciding a Rule 12(b)(6) motion to dismiss, "a district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and

3

Specifically, the Plaintiff alleges Schuman made repeated sexist comments in class, including the following: Schuman made comments about the Plaintiff's "sexiness" that made her uncomfortable; Schuman asked the Plaintiff if anyone told her that her looks did not match her voice, and that the mismatch was "kind of sexy"; Schuman told the Plaintiff that she was "perfect" in front of the entire class, accompanied by a facial expression and tone of voice that made clear that he was hitting on the Plaintiff and referring to her in a sexual manner; when the Plaintiff objected to a sexist comment Schuman made in class, Schuman announced in front of the class that "all women are bitches" and that "men should just stay single"; when a female student had cramps and was not feeling well, Schuman announced in front of the entire class, "you women have excuses with your period for everything"; and Schuman repeatedly commented on the clothing worn by the Plaintiff and other female students, and never commented on the clothing of male students. (Compl. ¶¶ 17-22, 29.)

---

documents incorporated by reference in the complaint. If a judge looks to additional materials, the motion should be converted into a motion for summary judgment." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) (citation omitted). The Court declines to convert this motion into one for summary judgment. Therefore, none of the Defendants' exhibits are considered on this motion.

4

Further, Schuman displayed improper sexually-charged conduct on several other occasions, including the following: when Schuman invited his wife to give a guest lecture to the class, he came up behind the Plaintiff and grabbed her waist and smiled at her as he walked away, startling the Plaintiff and making her uncomfortable; Schuman touched or grabbed female students in front of the Plaintiff, which made the Plaintiff noticeably uncomfortable; Schuman exacerbated this discomfort by looking at the Plaintiff with a facial expression that communicated his awareness of the Plaintiff's discomfort; Schuman massaged a female faculty member's shoulders in front of students, and told a student that Catholicism is the most sexual religion; Schuman told a female student in class that she was very attractive, and told another female student that she was beautiful and that she made him feel calm; Schuman appeared in front of students in a classroom with a woman sitting on his lap and with her arms around him; when a male student hugged Schuman in class, Schuman pushed the student away and said that he does not hug students; later, Schuman hugged the Plaintiff tightly and inappropriately; Plaintiff complained to Schuman and told him that she did not want to be touched or hugged by him, but

Schuman ignored her complaints and hugged the Plaintiff at graduation.[2] (Compl. ¶¶ 23-29.)

Due to these repeated interactions that the Plaintiff viewed to be highly inappropriate, the Plaintiff was consistently worried that she would run into Schuman at NYAA's facilities and be subjected to his sexist comments and inappropriate touching. (Compl. ¶ 30.) Plaintiff alleges that Schuman's persistent sexual comments and touching distracted her and significantly interfered with her ability to engage in and enjoy her studies. (Compl. ¶ 30.) Moreover, Schuman allegedly showed favoritism to female students who reacted favorably to his sexual comments and advances, and the Plaintiff believed this to be Schuman implicitly communicating a *quid pro quo* to the Plaintiff and other female students, such that the Plaintiff

---

[2] To the extent that the Plaintiff alleges conduct by Schuman, or any other Defendant, against anyone other than herself, she is prevented by the doctrine of standing from bringing any claims on the basis of these allegations. See *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (citation omitted). Where, as here, the party asserting the right does not have a "'close' relationship with the person who possesses the right," as defined by case law, and there is no "'hindrance' to the possessor's ability to protect his own interests," third party standing is improper. *Id.* at 130. However, the Plaintiff does not attempt to bring any claims on behalf of anyone other than herself, so standing doctrine is not implicated here.

worried that Schuman could block her from important academic and career opportunities if she was not nice to him. (Compl. ¶ 31.)

Several students, but not the Plaintiff specifically at this point, complained to NYAA's senior administrators about Schuman's sexual harassment of female students. (Compl. ¶ 32.) While the Plaintiff "supported" the complaints made by other female students against Schuman's sexual harassment in the classroom and NYAA's allegedly deliberate indifference response by "provid[ing] additional evidence in support of their claims and participat[ing] in efforts to get the school to change its policies and practices condoning Schuman's conduct," she did not personally file any complaints about Schuman's behavior with NYAA. (Compl. ¶ 36.) Examples of complaints by other students are as follows: in April 2014, Camila Yoshimoto complained to the NYAA administration about Schuman's conduct. She later met with the Dean of NYAA, who dismissed the complaints by saying that it was "just Wade being Wade." (Compl. ¶ 33.) In October 2014, Jedhy Vargas filed a written complaint against Schuman with NYAA, and scheduled a meeting with the Dean. The Dean refused to take any action against Schuman. (Compl. ¶ 34.) In October 2015, Magaly Vega-Lopez formally complained to the NYAA faculty and administration about Schuman's inappropriate conduct. NYAA did not take any action against Schuman. (Compl. ¶

35.) After the students' complaints remained unanswered, the Plaintiff and three other students asserted formal claims against NYAA, NYAA Holdings, and Schuman.

The Plaintiff alleges that the Defendants retaliated against her once they learned that she had joined three other students in alleging sexual harassment claims against Schuman. (Compl. ¶ 38.) The Plaintiff claims that Bowland, an NYAA faculty member who had written highly favorable recommendations for the Plaintiff in the past, and other NYAA faculty members retaliated against the Plaintiff by refusing to provide references or recommendations.[3] (Compl. ¶ 38.) Kratz, NYAA's president, allegedly discouraged the Plaintiff from attending NYAA events; the NYAA alumni association stopped sending emails to the Plaintiff even though she had previously been elected Secretary of that organization; and Defendants stopped making the Plaintiff aware of NYAA functions, art shows, and networking

---

[3] In their brief, the Defendants argue that Bowland did write the Plaintiff a letter of recommendation upon being served with the Complaint in this action. (*See* Defs.' Br. 2.) In her opposition brief, the Plaintiff responds to the Defendants' argument by stating that the letter Bowland wrote was only "a single, one-page letter." (Pl's Opp. Br. 16.) Because "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss," this motion is based solely on the allegations made in the Complaint. *See O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989).

events that could help her find employment as an artist. (Compl. ¶ 38.)

At this point, the Plaintiff spoke to Kratz directly about the sexual harassment and retaliation she and her classmates had allegedly endured. (Compl. ¶ 39.) The Plaintiff described to Kratz in detail how Schuman had sexually harassed her in the classroom, including his inappropriate hugging, touching, and sexist comments. (Compl. ¶ 39.) She also described to Kratz in detail how the faculty and administration at NYAA had shunned her and refused to help her with recommendations and other support ever since she supported the other students and complained about her own experience as a victim of Schuman's sexual harassment. (Compl. ¶ 39.) According to the Plaintiff, Kratz did not take adequate action to stop the sexual harassment or acts of retaliation against the Plaintiff, and Kratz's failure to take adequate corrective action emboldened Schuman and the other faculty members who were retaliating against the Plaintiff. (Compl. ¶ 40.)

After the Plaintiff told Kratz in detail how Schuman had sexually harassed her, Schuman continued to engage in sexual harassment at NYAA. (Compl. ¶ 41.) Moreover, after the Plaintiff told Kratz about the acts of retaliation against her, faculty

9

and staff at the school continued to shun the Plaintiff and deprive her of the benefits she had paid for and was promised as a student and alumna of the school. (Compl. ¶ 42.) Bowland, an NYAA faculty member who had written highly favorable recommendations for the Plaintiff in the past, told the Plaintiff that she could no longer help her due to the Plaintiff's sexual harassment claims against Schuman. (Compl. ¶ 43.) In an email to the Plaintiff rejecting her request for a recommendation, Bowland said, "I have never turned down a student I loved, as I did you, in 27 years of teaching. But the fact that you piled on to hurt Wade, makes it impossible for me to help you." (Compl. ¶ 43.)

As a direct and proximate result of the Defendants' conduct, the Plaintiff has allegedly suffered damages in excess of $75,000, exclusive of interest and costs. (Compl. ¶ 46.)

### III. **The Applicable Standard**

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to

10

'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially
plausible when "the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663
(quoting *Twombly*, 550 U.S. at 556). In other words, the factual
allegations must "possess enough heft to show that the pleader
is entitled to relief." *Twombly*, 550 U.S. at 557 (internal
quotation marks omitted).

While "a plaintiff may plead facts alleged upon
information and belief 'where the belief is based on factual
information that makes the inference of culpability plausible,'
such allegations must be 'accompanied by a statement of the
facts upon which the belief is founded.'" *Munoz-Nagel v. Guess,
Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y.
Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d
110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427
F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11
Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)).
The pleadings, however, "must contain something more than . . .
a statement of facts that merely creates a suspicion [of] a

11

legally cognizable right of action." *Twombly*, 550 U.S. at 555
(citation and internal quotation omitted).

In considering a motion to dismiss, "a district court
may consider the facts alleged in the complaint, documents
attached to the complaint as exhibits, and documents
incorporated by reference in the complaint." *DiFolco v. MSNBC
Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

## IV.  **The Defendants' Motions to Dismiss Plaintiff's Complaint Are Granted in Part, and Denied in Part**

### a. Defendants' Motions to Dismiss Plaintiff's Title IX Claims Are Granted in Part, and Denied in Part

Defendants NYAA and NYAA Holdings have moved to
dismiss Plaintiff's Title IX claims for sex discrimination and
retaliation as against both defendants. As to the sex
discrimination claim, Defendants argue that Novio was not
deprived of educational opportunities, an educational
institution is not vicariously liable for the acts of its
employees, and the Plaintiff has neither pled sufficient facts
of supposed harassment nor that any NYAA or NYAA Holdings
official had actual knowledge of harassment and failed to

12

respond. (Defs.' Br. 8-11). As to the retaliation claim,
Defendants argue that neither NYAA nor NYAA Holdings encouraged,
condoned, or approved the alleged retaliatory conduct, the
Plaintiff suffered no damages as a result of this alleged
conduct, and anyway, the alleged retaliation occurred when the
Plaintiff was no longer a student at NYAA. (Defs.' Br. 11-12,
17-19).

"Title IX of the Education Amendments of 1972
prohibits discrimination on the basis of gender in educational
programs and activities receiving federal financial assistance,
providing, with certain exceptions, that '[n]o person in the
United States shall, on the basis of sex, be excluded from
participation in, be denied the benefits of, or be subjected to
discrimination under any education program or activity receiving
Federal financial assistance.'" *Bailey v. New York Law School*,
No. 16 Civ. 4283 (ER), 2017 WL 835190, at *6 (March 1, 2017)
(citing 20 U.S.C. § 1681(a)).

i. *Title IX Sex Discrimination Claim (Count One)*

It is well-established that "sexual harassment in the
educational context—whether teacher-on-student or student-on-
student—may constitute discrimination in violation of [Title

13

IX]." *Bailey*, 2017 WL 835190, at *6 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649-50 (1999)). "A plaintiff can establish a hostile educational environment claim under Title IX if [s]he demonstrates 'that [s]he subjectively perceived the environment to be hostile or abusive and that the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] educational environment.'" *Id.* However, for an educational facility to be liable, "the plaintiff must establish that a school official with 'authority to address the alleged discrimination and to institute corrective measures' had 'actual knowledge' of the discrimination and failed to adequately respond." *Papelino*, 633 F.3d at 89. "A school fails to adequately respond if it provides no response or if it provides a response that 'amount[s] to deliberate indifference to discrimination.'" *Id.*, 633 F.3d at 89. For example, a school is liable for deliberate indifference where it or its agents "knowing[ly] refus[ed] to take any action in response to the behavior, such as investigating or putting an end to the harassment, or refus[ed] to take action to bring the recipient institution into compliance." *Id.* at 90 (citing *Davis*, 526 U.S. at 648) and *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1998) (alterations in original) (internal quotation

14

marks and citations omitted)). Finally, "[t]he statute of
limitations for a Title IX claim based on conduct occurring in
New York is three years." *Irrera v. Humpherys*, 695 F. App'x 626,
628 (2d Cir. 2017) (citing *Curto v. Edmundson*, 392 F.3d 502, 504
(2d Cir. 2004)).

Because the Plaintiff filed this action on July 25,
2017, any Title IX claim based on conduct alleged to have
occurred prior to July 25, 2014 is time-barred and dismissed.[4]
As for conduct alleged to have occurred within the three years
prior to filing suit, these allegations are likewise dismissed
based on the following reasons.

As Plaintiff's factual allegations are assumed true
and all reasonable inferences are drawn in the Plaintiff's favor
for purposes of this motion, it is assumed true that NYAA is an
educational institution receiving federal funding sufficient to
subject it to Title IX. *See Mills*, 12 F.3d at 1174. In the same
vein, the Plaintiff's claim that she subjectively perceived the
environment to be hostile is taken on its face. In determining
whether Plaintiff's educational environment was objectively

---

[4] Similarly, claims pursuant to the NYSHRL and NYCHRL "are
subject to a three-year statute of limitations." *Bermudez v. City of
New York*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011). As such, all
allegations accruing prior to July 25, 2014 are time-barred.

15

hostile or abusive, however, this Court must look to "the totality of the circumstances rather [than] individual events in isolation." *Papelino*, 633 F.3d at 91 (citing *Gregory v. Daly*, 243 F.3d 687, 693 (2d Cir. 2001)).

In *Gregory*, the Second Circuit concluded that a hostile work environment claim survived a motion to dismiss where the female employee-plaintiff claimed her supervisor "(a) made demeaning comments about women, (b) made sexually demeaning statements, (c) initiated unwelcome physical conduct of a sexual nature, and (d) intimidated her by 'standing uncomfortably close to [her] even though [she] asked him to move away.'" *Id.* The court held that the plaintiff "could reasonably have found her workplace to be both physically and sexually threatening" because the supervisor's conduct "allegedly combined verbal abuse, ostentatious and graphic references to sexual assault and women's vulnerability to it, and intimidating physical behavior." *Id.* Moreover, in *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir. 2001), the Second Circuit found a hostile work environment claim survived a motion for summary judgment where a supervisor looked at women "up and down in a way that [was] very uncomfortable," and had, on these occasions, moved toward the plaintiff until she was backed against a wall. Also, "when [the plaintiff] informed [the supervisor] that she disliked this

16

behavior, he would either laugh or ignore her." *Id.* The court held that this "physically threatening" behavior crossed "the line separating merely offensive or boorish conduct from actionable sexual harassment." *Id.*

Here, the Plaintiff has sufficiently pled facts that, if proven, establish that she "was required to endure an environment that 'objectively' was *severely* and *pervasively* hostile." *See Gregory*, 243 F.3d at 693 (emphasis in original). According to the Plaintiff's allegations, Schuman made repeated sexist comments in class directed at the Plaintiff specifically as well as women in general; he repeatedly sexualized the Plaintiff by commenting on her clothing and grabbing her waist; and he repeated his behavior by hugging the Plaintiff at graduation, even though she had told him that she did not want to be touched by him. (*See* Compl. ¶¶ 17-22, 29.)

However, the Plaintiff has not pled sufficient facts demonstrating either that NYAA or NYAA Holdings had actual knowledge of Schuman's conduct against the Plaintiff, or that the Defendants failed to respond adequately to this knowledge sufficient to satisfy the remainder of the Title IX inquiry. The Plaintiff alleges in her Complaint that three other female students complained to the NYAA administration and met with the

17

Dean of NYAA after Schuman's conduct. While there is no reason
to believe that the Plaintiff needs to have personally
communicated this information herself, she has not alleged that
the content of the complaints to the NYAA in any capacity was
regarding Schuman's specific conduct against her. The crucial
distinction between the cases the Plaintiff cites and the
present action is whether the administration received sufficient
information about the alleged conduct against the Plaintiff
herself to satisfy the actual knowledge requirement.
Absent this allegation, the Plaintiff has failed to "state a
claim to relief that is plausible on its face," *see Iqbal*, 556
U.S. at 678, and this claim must be dismissed.


i.    ***Title IX Retaliation Claim (Count Two)***


"[R]etaliation against individuals because they
complain of sex discrimination is 'intentional conduct that
violates the clear terms of [Title IX].'" *Jackson v. Birmingham
Bd. of Educ.*, 544 U.S. 167, 183 (2005) (quoting *Davis*, 526 U.S.
at 642) (alterations in original). In order to state a claim for
retaliation, a plaintiff must first establish a *prima facie* case
by demonstrating: "(1) protected activity; (2) knowledge by the
defendant of the protected activity; (3) adverse school-related
action; and (4) a causal connection between the protected

activity and the adverse reaction." *Bailey*, 2017 WL 835190, at
*7 (citing *Papelino*, 633 F.3d at 91). "Once a plaintiff
establishes a *prima facie* case, the burden shifts to the
defendant to articulate a legitimate, nondiscriminatory reason
for its actions." *Papelino*, 633 F.3d at 92. "After the defendant
has done so, the burden shifts back to the plaintiff to
demonstrate that the articulated reasons are pretextual." *Id.*


However, at the pleading stage, "a plaintiff need not
plead facts giving plausible support to the 'ultimate question'
of whether an adverse action was attributable to the
discrimination; rather, the facts need only give plausible
support to a 'minimal inference' of discriminatory motivation."
*Bailey*, 2017 WL 835190, at *7 (citing *Littlejohn v. City of New
York*, 795 F.3d 297, 311 (2d Cir. 2015)); *see also Dawson v.
N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015)
(summary order) ("At the pleading stage, district courts would
do well to remember this exceedingly low burden that
discrimination plaintiffs face . . . . "); *Doe v. Columbia
Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (alteration and emphasis
in original) (noting that "the inference of discriminatory
intent supported by the pleaded facts [need not] be *the most
plausible* explanation of the defendant's conduct. It is
sufficient if the inference of discriminatory intent is

plausible."). Moreover, "[c]lose temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself be sufficient to establish the requisite causal connection." *Papelino*, 633 F.3d at 91 (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)).[5]

Here, the Plaintiff has met her exceedingly low burden of demonstrating a plausible minimal inference that NYAA and NYAA Holdings retaliated against her because of her filing of a lawsuit. First, Plaintiff's allegations that she joined with three other students in filing a lawsuit against NYAA, NYAA Holdings, and Schuman satisfies the first element for "participation in a protected activity." *See, e.g., Bryant v. Greater New Haven Transit District*, 8 F. Supp. 3d 115 (D. Conn. 2014) (concluding that filing a CHRO complaint qualified as participation in a protected activity). Second, Defendants do not dispute that they were aware of this protected activity. As to the third and fourth elements, assuming the Plaintiff's allegations to be true as this Court is required to on a motion to dismiss, it is at least plausible to infer that NYAA took

---

[5] Defendants argue that the Plaintiff is prohibited from bringing a retaliation claim under Title IX at all, since the alleged retaliation occurred after the Plaintiff was no longer enrolled at NYAA. (Defs.' Br. 5.) However, there is no basis for this argument in the law. *See Irrera v. Humpherys*, 859 F.3d 196, 198-99 (2d Cir.) (holding that an alumnus stated a claim for retaliation sufficient to withstand dismissal).

adverse action against the Plaintiff in the forms the Plaintiff
has alleged here.

For example, in *Irrera*, 859 F.3d at 198-99, the Second
Circuit allowed a retaliation claim to proceed where the
student-plaintiff had not received any job interviews, even
though he was highly qualified. The Second Circuit found as such
even though the plaintiff provided "no allegation that he [was]
aware of a negative reference sent to any particular school."
*Id.* at 199. Moreover, in *Bailey*, 2017 WL 835190, at *7, a
district court denied the law school's motion to dismiss where
the plaintiff alleged she was unable to obtain a letter of
recommendation from a professor after having complained to
school officials about allegedly improper conduct by another
student. The court found that the close proximity between the
plaintiff's alleged complaints to the school and the alleged
retaliation made it "at least minimally plausible . . . that the
School took adverse action against Plaintiff because of her
repeated complaints." *Id.*

Here, the Plaintiff alleges that "Defendants stopped
making plaintiff aware of Academy functions, art shows, and
networking events that could help her find employment as an
artist"; Kratz "discouraged plaintiff from attending [Academy]

21

events"; Professor "Bowland and other [Academy] faculty . . .
refus[ed] to provide references or recommendations"; and the
"alumni association stopped sending emails to plaintiff even
though she had previously been elected Secretary of that
organization." (Compl. ¶ 38.) Even though the Plaintiff has not
alleged specifically that NYAA or NYAA Holdings endorsed,
condoned, or approved the alleged conduct, (see Defs.' Br. 11,
17) the Plaintiff has satisfied the "exceedingly low burden of
demonstrating a plausible minimal inference" of retaliation
against her because of her complaints. Accordingly, this claim
survives dismissal.[6]

b. Defendants' Motions to Dismiss Plaintiff's New York State
Human Rights Law Claims Are Granted in Part, and Denied
in Part

Defendants NYAA, NYAA Holdings, Kratz, and Schuman
have moved to dismiss Plaintiff's New York State Human Rights
Law ("NYSHRL") claims for sex discrimination and retaliation as

_____

[6] As for all claims here, the Court's decision to permit the
Plaintiff to proceed on her retaliation claim "in no way suggests that
[the] court has any view, one way or the other, on the likely accuracy
of what Plaintiff has alleged . . . . The role of the court at this
stage of the proceedings is not in any way to evaluate the truth as to
what really happened, but merely to determine whether the plaintiff's
factual allegations are sufficient to allow the case to proceed." See
Bailey, 2017 WL 835190, at *7 n.8 (citing Columbia Univ., 831 F.3d at
59).

22

against each defendant. As to the sex discrimination claim, NYAA and NYAA Holdings argue that they are not places of public accommodation, and that even if they were, the Plaintiff was not deprived of the Academy's educational opportunities and neither NYAA nor NYAA Holdings encouraged, condoned, or approved of Schuman's alleged conduct. Kratz and Schuman argue that they cannot be found liable of sex discrimination pursuant to the NYSHRL because it does not provide for individual liability. As to the retaliation claim, NYAA and NYAA Holdings again argue that they may not be found liable under the NYSHRL because they are not places of public accommodation, and additionally, because the Plaintiff does not allege either that they encouraged, condoned, or approved Schuman's alleged conduct or that Plaintiff suffered any damages. Kratz, Schuman, and Bowland argue that, as individual defendants, the NYSHRL does not create a cause of action as to them. Schuman further argues that Plaintiff's NYSHRL claims are time-barred.

### i. *NYSHRL Sex Discrimination Claim (Count Three)*

Plaintiff alleges that Defendants are subject to the NYSHRL because NYAA and NYAA Holdings are places of public accommodation and education corporations and associations, pursuant to §§ 296(2) and 296(4) respectively, and Kratz and

23

Schuman aided and abetted Schuman's alleged activity in violation of those same statutes. For the following reasons, Defendants' motions to dismiss Plaintiff's claims against NYAA, NYAA Holdings, Kratz, and Schuman are all granted.

The NYSHRL prohibits sex discrimination and harassment by "places of public accommodation," stating, in relevant part:

> It shall be an unlawful discriminatory practice for any person . . . agent or employee of any place of public accommodation, . . . because of the . . . sex . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges therefor . . . .

N.Y. Exec. Law § 296(2). In defining a "place of public accommodation," the statute expressly excludes "academies, colleges and universities, and all educational institutions under the supervision of the regents of the state of New York." *See id.* § 292(9). Even if the NYAA were not simply deemed an "academ[y]" for the purposes of this definition as common sense might provide, upon judicial notice it is determined that at the very least NYAA is an "educational institution[] under the supervision of the regents of the state of New York," *see id.*, sufficient to exempt it from the status of a "place of public accommodation." Such a determination may be made upon judicial notice because the Plaintiff alleges she received a Masters of Fine Arts degree from NYAA in May 2015, and only educational

24

institutions with "degree conferring powers by special charter from the legislature of this state or from the regents" may "confer any degree." *See* N.Y. Educ. Law § 224(1)(a); *see also Bentley v. Dennison*, 852 F. Supp. 2d 379, 382 n.5, *aff'd sub nom. Betances v. Fisher*, 519 F. App'x 39 (2d Cir. 2013) ("Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned.").

Similarly, viewing all facts in the light most favorable to the Plaintiff, NYAA Holdings is also not a "place of public accommodation," either if it is treated as an educational institution, for the abovementioned reason, or if it is simply treated as a holdings company, as such an entity does not meet any of the definitions listed in § 292(9).[7] *See* N.Y.

---

[7] Executive Law § 292(9) provides, in relevant part:

> The term "place of public accommodation, resort or amusement" shall include, regardless of whether the owner or operator of such place is a state or local government entity or a private individual or entity, except as hereinafter specified, all places included in the meaning of such terms as: inns, taverns, road houses, hotels, motels, whether conducted for the entertainment of transient guests or for the accommodation of those seeking health, recreation or rest, or restaurants, or eating houses, or any place where food is sold for consumption on the premises; buffets, saloons, barrooms, or any store,

25

Exec. Law § 292(9). Accordingly, it is taken upon judicial notice that neither NYAA nor NYAA Holdings are "place[s] of public accommodation" for purposes of this motion.

Further, the NYSHRL similarly prohibits "education corporations or associations" from sex discrimination and harassment, providing in relevant part that:

> It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation pursuant to the provisions of article four of the real property tax law to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his . . . sex . . . .

---

park or enclosure where spirituous or malt liquors are sold; ice cream parlors, confectionaries, soda fountains, and all stores where ice cream, ice and fruit preparations or their derivatives, or where beverages of any kind are retailed for consumption on the premises; wholesale and retail stores and establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals, bath-houses, swimming pools, laundries and all other cleaning establishments, barber shops, beauty parlors, theatres, motion picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, trailer camps, resort camps, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors; garages, all public conveyances operated on land or water or in the air, as well as the stations and terminals thereof; travel or tour advisory services, agencies or bureaus; public halls, public rooms, public elevators, and any public areas of any building or structure.

N.Y. Exec. Law § 292(9).

*Id.* § 296(4).[8] Viewing the Plaintiff's allegations in the light most favorable to her, and considering that Defendants NYAA and NYAA Holdings do not dispute that they are "education corporations or associations" within the meaning of the NYSHRL, the Plaintiff has sufficiently pled that NYAA and NYAA Holdings are "education corporations or associations" for purposes of this motion.

However, because "[t]he identical standards apply to . . . discrimination claims brought under . . . Title IX [and] New York Executive Law § 296," *see Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000), Plaintiff's sex discrimination claims here are subject to the same deficiencies as provided above. Accordingly, Plaintiff's sex discrimination claims as to NYAA and NYAA Holdings are dismissed.

As to the individual defendants, Plaintiff alleges that Schuman actively engaged in, and aided and abetted his own, sex discrimination and harassment against the Plaintiff, and that Kratz aided and abetted Schuman's conduct. (Compl. ¶¶ 66, 69.) Presumably, the Plaintiff hinges these claims on sections

_____

[8] Defendants NYAA and NYAA Holdings do not contest that they are "education corporations or associations" within the meaning of the NYSHRL.

296(2) and 296(4), as stated above, as well as section 296(6),
which provides "It shall be an unlawful discriminatory practice
for any person to aid, abet, incite, compel or coerce the doing
of any of the acts forbidden under this article, or to attempt
to do so." *See* N.Y. Exec. Law § 296(6).

As to section 296(2), because the Plaintiff has not
sufficiently alleged facts showing that either NYAA or NYAA
Holdings are a "place of public accommodation," she has
similarly failed to plead sufficient facts as to the individual
defendants. *See id.* § 296(2). As to section 296(4), "because
that section applies only to education corporations, which the
employees obviously are not," the individual defendant-employees
cannot be found liable pursuant to that section. *See T.C. v.
Valley Cent. School Dist.*, 777 F. Supp. 2d 577, 604 (S.D.N.Y.
2011); N.Y. Exec. Law § 296(4). As to section 296(6), "where, as
here, [NYSHRL] does not even apply to the employer, a finding
that the statute nonetheless applies to its employees flies in
the face of logic." *Pratt v. Indian River Cent. Sch. Dist.*, 803
F. Supp. 2d 135, 149 (N.D.N.Y. 2011).

Accordingly, Plaintiff has failed to sufficiently
plead sex discrimination under the NYSHRL as to either Kratz or
Schuman, and these claims are dismissed.

28

## ii. *NYSHRL Retaliation Claim (Count Four)*

Additionally, Plaintiff alleges Defendants NYAA, NYAA Holdings, Kratz, Schuman, and Bowland engaged in retaliation against the Plaintiff in violation of NYSHRL § 296(7) because of her efforts to report, object to, and remedy sex discrimination and harassment at NYAA. Section 296(7) provides:

It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

N.Y. Exec. Law § 296(7). "Section § 296(1) of the NYSHRL states that it is unlawful for an employer to discriminate on the basis of, *inter alia*, race, creed, color, national origin, sexual orientation, sex or disability." *Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp. 3d 492, 495 (E.D.N.Y. 2014).

Because the Plaintiff has sufficiently pled a retaliation claim against NYAA and NYAA Holdings under Title IX, she has similarly adequately pled a corresponding claim under the NYSHRL and NYCHRL. *See Munson v. Diamond*, No. 15-CV-00425 (DAB)(BCM), 2017 WL 4863096, at *5 (S.D.N.Y. June 1, 2017) (citation omitted) ("A well-pled Title VII discrimination . . . claim is sufficient to support a corresponding claim under the

29

NYSHRL, as well as under the NYCHRL") and *Columbia Univ.*, 831
F.3d at 55 (finding that the Second Circuit has "applied Title
VII's framework and principles to Title IX claims.").
Accordingly, because the Plaintiff has adequately pled
retaliation claims under Title IX against NYAA and NYAA
Holdings, she has similarly pled such claims pursuant to §
296(7).

As to the individual defendants, "[w]hile there is no
claim for individual liability under [Title IX], 'defendants may
be held individually liable under the [NYSHRL].'" *Delisi*, 48 F.
Supp. 3d at 495 (citing *Feingold v. New York*, 366 F.3d 138, 157
(2d Cir. 2004) and *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d
Cir. 1995)) (citation omitted). "An individual will not be
subject to liability under the [NYSHRL] unless he or she is
shown to have an ownership interest or any power to do more than
carry out personnel decisions made by others." *E.E.O.C. v.
Suffolk Laundry Servs., Inc.*, 48 F. Supp. 3d 497, 524 (E.D.N.Y.
2014) (citing *N.Y.S. Div. of Human Rights v. ABS Elecs., Inc.*,
102 A.D.3d 967, 958 N.Y.S.2d 502, 504 (2013)). As such,
liability may be extended to "any individual defendant who
'actually participated in the conduct giving rise to a
discrimination claim.'" *Id.*

Here, the Plaintiff has properly alleged the individual Defendants' participation in the events: Schuman allegedly carried out the discriminatory conduct; Kratz allegedly was informed of Schuman's behavior and did nothing; and Bowland allegedly refused to write the Plaintiff a positive letter of recommendation because the Plaintiff complained about Schuman. According to these allegations, the Plaintiff has pled that each Schuman, Kratz, and Bowland "actually participated in the conduct giving rise to the discrimination claim[s]." *Id.*

Next, the requirements for stating a retaliation claim under the NYSHRL are similar to those under Title IX, and the Plaintiff must establish: "(1) protected activity; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse reaction." *Bailey*, 2017 WL 835190, at *7 (citing *Papelino*, 633 F.3d at 91); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) ("A plaintiff's burden at this *prima facie* stage is *de minimis.*").

Here, the Plaintiff has sufficiently pled allegations of retaliation against the individual defendants to satisfy the *de minimis* required showing. First, the Plaintiff has alleged that she provided evidence in support of her own and other

31

students' legal claims against Schuman and that she described the alleged sexual harassment and retaliation in detail to Kratz, both of which are protected activities. *See Bryant v. Greater New Haven Transit Dist.*, 8 F. Supp. 3d 115, 132-33 (D. Conn. 2014). Second, the Plaintiff has adequately alleged that each individual Defendant was aware the Plaintiff had complained about Schuman's conduct. Specifically, Plaintiff alleges that Schuman, as the subject of the initial lawsuit, was aware of the Plaintiff's participation; that Kratz had knowledge of the allegations by way of the Plaintiff's direct complaints to him; and that Bowland was aware of the allegations given her comment to Plaintiff: "But the fact that you piled on to hurt Wade, makes it impossible for me to help you." (Compl. ¶ 5.) Third, the Plaintiff has sufficiently alleged that the individual Defendants engaged in adverse-school related actions against her, and fourth, that a causal connection exists between the Plaintiff's protected activity and these actions. Construing the evidence and drawing all reasonable inferences in favor of the Plaintiff, she has properly alleged retaliatory actions by Kratz in that he discouraged the Plaintiff from attending NYAA events; stopped making the Plaintiff aware of NYAA functions, art shows, and networking events; and the NYAA alumni association stopped sending emails to Plaintiff. In alleging that Bowland refused to write the Plaintiff a letter of recommendation, the Plaintiff

32

alleges some form of adverse-school related action that is temporally proximate to the Plaintiff's participation in the action against Schuman. Finally, the Plaintiff has alleged that Schuman continued to engage in sexual harassment at NYAA, sufficient to satisfy pleading requirements. Given that "[c]lose temporal proximity between the plaintiff's protected activity and the . . . adverse action may in itself be sufficient to establish the requisite causal connection," the Plaintiff has plausibly pled retaliation claims as to the individual Defendants to satisfy the *de minimis* required showing. *See Papelino*, 633 F.3d at 91 (internal citation omitted).

c. Defendants' Motions to Dismiss Plaintiff's New York City Human Rights Law Claims Are Granted in Part, and Denied in Part

Under the New York City Human Rights Law ("NYCHRL"), it is an "unlawful discriminatory practice" for

> any person, being the . . . agent or employee of any place or provider of public accommodation, because of the actual or perceived . . . gender . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . .

N.Y.C. Admin. Code § 8-107(4)(a). Unlike Title IX or the NYSHRL, the NYCHRL defines "provider of public accommodation" to mean

33

"providers . . . of goods, services, facilities, accommodations, advantages or privileges of any kind." *Id.* § 8-102(9). NYAA and NYAA Holdings concede that a graduate school is a place of public accommodation under the NYCHRL, (*see* Defs.' Br. 20), and that "[e]mployers are liable under the NYCHRL for discriminatory conduct of an employee or agent who exercised managerial or supervisory responsibility." *See Nazario v. Promed Pers. Servs. NY Inc.*, No. 15 Civ. 6989 (LGS), 2017 WL 2664202, at *6 (S.D.N.Y, June 19, 2017) (citing N.Y.C. Admin Code § 8-107(13)(b)).

### i. *NYCHRL Sex Discrimination Claims (Count Five)*

"Under the NYCHRL, a plaintiff need not demonstrate that the treatment was 'severe or pervasive' . . . [but] need only show that she has been treated 'less well' than other [students] because of a protected characteristic."[9] *Gaughan v. Rubenstein*, No. 16 Civ. 8062 (PAE)(KHP), 2017 WL 2964818, at *10

---

[9] While the NYCHRL has traditionally been applied in the employment context, there is little reason to refrain from applying it to the educational context, particularly given the similar application of the Title IX and the NYSHRL to the educational setting, *see e.g., Papelino*, 633 F.3d at 89 (applying Title IX to school setting); *Munson*, 2017 WL 4863096, at *5 (applying Title IX framework to NYSHRL and NYCHRL claims), and that the NYCHRL "requires that courts give the statute an independent and more liberal construction than its federal and state counterparts." *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 257 (E.D.N.Y. 2012).

34

(S.D.N.Y. July 11, 2017). In doing so, just like under Title IX and the NYSHRL, "the plaintiff must allege some facts to support the inference that the hostile treatment was due to a protected characteristic." *Id.* (citing *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 73-78, 872 N.Y.S.2d 27 (1st Dep't 2009)). "[T]he provisions of the [NYCHRL] should be construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885, 998 N.E.2d 1050, 1052-53 (2013) (citing *Albunio v. City of New York*, 16 N.Y.3d 472, 477-78, 922 N.Y.S.2d 244 (2011)).

"The standard for maintaining a hostile [school] environment claim is lower under the NYCHRL than under the NYSHRL and [Title IX]." *Gaughan v. Rubenstein*, No. 16 Civ. 8062 (PAE)(KHP), 2017 WL 2964818, at *13 (S.D.N.Y. July 11, 2017). Accordingly, where the Plaintiff's claims survived a motion to dismiss under Title IX or the NYSHRL, they similarly survive such a motion here.

As to Schuman, the Plaintiff has alleged facts sufficient to survive a motion to dismiss. The Plaintiff alleges that Schuman's comments were directed only at female students and that his physical hugging and touching was focused only

toward women. These details, when construed broadly in favor of the Plaintiff, are sufficient to show on a motion to dismiss that the Plaintiff was treated "less well" than similarly situated male students. As such, Plaintiff's claim as to Schuman is not dismissed. However, as to Kratz, NYAA and NYAA Holdings, the Plaintiff has not pled any allegations demonstrating that they treated her "less well" on the basis of her gender. Accordingly, these claims are dismissed.

### ii. *NYCHRL Retaliation Claims (Count Six)*

"Under the NYCHRL, a plaintiff need not show that any [school-related] action was taken against her, but must instead show that, as a result of her engaging in a protected activity, some action was taken that would be reasonably likely to deter her from engaging in the activity again." *Gaughan*, 2017 WL 2964818, at *12 (citing *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011)).

The Plaintiff's NYCHRL claims against all Defendants are sufficiently pled because "[a] well-pled [Title IX] discrimination . . . claim is sufficient to support a corresponding claim under . . . the NYCHRL") *See Munson v. Diamond*, No. 15-CV-00425 (DAB)(BCM), 2017 WL 4863096, at *5

(S.D.N.Y. June 1, 2017) (citation omitted) and *Columbia Univ.*,
831 F.3d at 55. Accordingly, the Defendants' motions to dismiss
these claims are denied.

### d. Defendants' Motion to Dismiss Plaintiff's Breach of Contract Claim is Granted

The Plaintiff asserts that she entered into a valid
and binding contract with NYAA, and that in return for monetary
consideration, NYAA made specific promises to the Plaintiff,
including to provide her with an educational environment free of
sex discrimination and sexual harassment; to respond promptly to
complaints of sexual harassment; to designate a Title IX
coordinator to address such complaints; not to retaliate against
anyone who participated in reporting such harassment or
discrimination; and to provide career services to the Plaintiff.
(Compl. ¶¶ 79-81.) Plaintiff alleges that NYAA breached this
contract by failing to perform these contractual duties and
obligations.

Under New York law, "a student may bring a breach of
contract action against an institution of higher education."
*Bailey*, 2017 WL 835190, at *9 (citing *Keefe v. N.Y. Law Sch.*, 71
A.D.3d 569, 570 (1st Dep't 2010)). "However, only specific

promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Id.*

Here, the Plaintiff does not point to any document or communication with NYAA giving rise to a promise, and as such her contract claim must be dismissed. *See id.* (holding that where the plaintiff fails to allege the existence of a contract with the school, a breach of contract claim must be dismissed); *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206-07 (S.D.N.Y. 1998) ("[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.").

## V.    Conclusion

For the foregoing reasons, the Defendants' motions to dismiss are granted in part, and denied in part. Where the Plaintiff's claims are dismissed, she is granted leave to replead within thirty (30) days.

It is so ordered.

**New York, NY**
**December, 1/, 2017**

ROBERT W. SWEET
**U.S.D.J.**