UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

SARAH NOVIO,

                    Plaintiff,                    17 Civ. 5648 (RWS)

          -against-                               OPINION

THE NEW YORK ACADEMY OF ART; NYAA
HOLDINGS, LLC; DAVID KRATZ; WADE
SCHUMAN; and MARGARET BOWLAND,

                    Defendants.
--------------------------------------X

A P P E A R A N C E S:


          Attorneys for Plaintiff

          THE HOWLEY LAW FIRM P.C.
          350 Fifth Avenue, 59th Floor
          New York, NY 10118
          By:  John J.P. Howley, Esq.


          Attorneys for Defendant The New York
          Academy of Art

          SCHLAM STONE & DOLAN LLP
          26 Broadway
          New York, NY 10004
          By:  Richard H. Dolan, Esq.
               Bradley J. Nash, Esq.
               Hillary S. Zilz, Esq.
               Joshua Wurtzel, Esq.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/18/18

1

**Sweet, D.J.**

Defendant The New York Academy of Art ("NYAA" or the "Academy" or the "Defendant Academy") has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), for partial dismissal of the Second Amended Complaint ("SAC") of Plaintiff Sarah Novio ("Novio" or the "Plaintiff"), in which she alleges claims of sex discrimination, sexual harassment, a hostile educational environment, and unlawful retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and for breach of contract under New York state law. Specifically, Defendant Academy seeks dismissal of the breach of contract claim. Based on the facts and conclusions set forth below, Defendant Academy's partial motion to dismiss is granted in part, and denied in part.

## I.    **Prior Proceedings**

Plaintiff commenced this action on July 25, 2017, alleging sex discrimination, sexual harassment, a hostile educational environment, and unlawful retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§

2

1681, *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and for breach of contract under New York State law, as set forth in the SAC and as set forth below. Defendants the Academy, NYAA Holdings, LLC ("NYAA Holdings"), David Kratz ("Kratz"), Wade Schuman ("Schuman"), and Margaret Bowland ("Bowland") (collectively, the "Defendants") moved to dismiss the original complaint on October 3, 2017, which this Court granted in part, and denied in part. *See Novio v. New York Academy of Art* ("First Motion to Dismiss"), 286 F. Supp. 3d 566 (S.D.N.Y. 2017). Plaintiff filed the SAC on January 26, 2018. Defendant Academy filed the instant motion to dismiss on February 23, 2018, which was argued and marked fully submitted on April 11, 2017.

## II.  **The Facts**

The SAC sets forth the following facts, which are assumed true for the purpose of this motion to dismiss. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Novio* ("First Motion to Dismiss"), 286 F. Supp. 3d 566.

Plaintiff attended NYAA from September 2013 until May 2015, when she graduated with a Masters of Fine Arts degree. SAC

3

¶ 2. Plaintiff took courses from Defendant Schuman, an NYAA professor and Department Chairman, in 2014 and 2015, during which time Plaintiff found that Schuman's persistent sexual commentary in the classroom and inappropriate touching of female students created a hostile educational environment that interfered with Plaintiff's education. SAC ¶¶ 16, 35.

Specifically, Plaintiff alleges Schuman made repeated sexist comments in class, including the following: Schuman made comments about the Plaintiff's "sexiness" that made her uncomfortable; Schuman asked the Plaintiff if anyone told her that her looks did not match her voice, and that the mismatch was "kind of sexy"; Schuman told the Plaintiff that she was "perfect" in front of the entire class, accompanied by a facial expression and tone of voice that made clear that he was hitting on the Plaintiff and referring to her in a sexual manner; when the Plaintiff objected to a sexist comment Schuman made in class, Schuman announced in front of the class that "all women are bitches" and that "men should just stay single"; when a female student had cramps and was not feeling well, Schuman announced in front of the entire class, "you women have excuses with your period for everything"; and Schuman repeatedly commented on the clothing worn by the Plaintiff and other female

4

students, and never commented on the clothing of male students.
SAC ¶¶ 17-22, 29.

Further, Schuman displayed improper sexually-charged
conduct on several other occasions, including the following:
when Schuman invited his wife to give a guest lecture to the
class, he came up behind the Plaintiff and grabbed her waist and
smiled at her as he walked away, startling the Plaintiff and
making her uncomfortable; Schuman touched or grabbed female
students in front of the Plaintiff, which made the Plaintiff
noticeably uncomfortable; Schuman exacerbated this discomfort by
looking at the Plaintiff with a facial expression that
communicated his awareness of the Plaintiff's discomfort;
Schuman massaged a female faculty member's shoulders in front of
students, and told a student that Catholicism is the most sexual
religion; Schuman told a female student in class that she was
very attractive, and told another female student that she was
beautiful and that she made him feel calm; Schuman appeared in
front of students in a classroom with a woman sitting on his lap
and with her arms around him; when a male student hugged Schuman
in class, Schuman pushed the student away and said that he does
not hug students; later, Schuman hugged the Plaintiff tightly
and inappropriately; Plaintiff complained to Schuman and told
him that she did not want to be touched or hugged by him, but

5

Schuman ignored her complaints and hugged the Plaintiff at graduation. SAC ¶¶ 21, 23, 25-28.

Due to these repeated interactions that the Plaintiff viewed to be highly inappropriate, the Plaintiff was consistently worried that she would run into Schuman at NYAA's facilities and be subjected to his sexist comments and inappropriate touching. SAC ¶ 34. Plaintiff alleges that Schuman's persistent sexual comments and touching distracted her and significantly interfered with her ability to engage in and enjoy her studies. SAC ¶¶ 34-35. Moreover, Schuman allegedly showed favoritism to female students who reacted favorably to his sexual comments and advances, and the Plaintiff believed this to be Schuman implicitly communicating a *quid pro quo* to the Plaintiff and other female students, such that the Plaintiff worried that Schuman could block her from important academic and career opportunities if she was not nice to him. SAC ¶ 30.

Several students, but not the Plaintiff at this point, complained to NYAA's senior administrators about Schuman's sexual harassment of female students. SAC ¶ 36. While the Plaintiff "supported" the complaints made by other female students against Schuman's sexual harassment in the classroom and NYAA's allegedly deliberate indifferent response by

6

"provid[ing] additional evidence in support of their claims and participat[ing] in efforts to get the school to change its policies and practices condoning Schuman's conduct," she did not personally file any complaints about Schuman's behavior with NYAA at this time. SAC ¶ 40. Examples of complaints made by other students are as follows: in April 2014, Camila Yoshimoto complained to the NYAA administration about Schuman's conduct. She later met with the Dean of NYAA, who dismissed the complaints by saying that it was "just Wade being Wade." SAC ¶ 37. In October 2014, Jedhy Vargas filed a written complaint against Schuman with NYAA, and scheduled a meeting with the Dean. The Dean refused to take any action against Schuman. SAC ¶ 38. In October 2015, Magaly Vega-Lopez formally complained to the NYAA faculty and administration about Schuman's inappropriate conduct. NYAA did not take any action against Schuman. SAC ¶ 39. After the students' complaints remained unanswered, the Plaintiff and three other students asserted formal claims against NYAA, NYAA Holdings, and Schuman. SAC ¶ 40.

The Plaintiff alleges that the Defendants retaliated against her once they learned that she had joined three other students in alleging sexual harassment claims against Schuman. SAC ¶ 42. The Plaintiff claims that Bowland and other NYAA

7

faculty members retaliated against the Plaintiff by refusing to provide references or recommendations. SAC ¶ 42. Kratz, NYAA's president, allegedly discouraged the Plaintiff from attending NYAA events; the NYAA alumni association stopped sending emails to the Plaintiff even though she had previously been elected Secretary of that organization; and Defendants stopped making the Plaintiff aware of NYAA functions, art shows, and networking events that could help her find employment as an artist. SAC ¶ 42.

At this point, the Plaintiff spoke to Kratz directly about the sexual harassment and retaliation she and her classmates had allegedly endured. SAC ¶ 43. The Plaintiff described to Kratz in detail how Schuman had sexually harassed her in the classroom, including his inappropriate hugging, touching, and sexist comments. SAC ¶ 43. She also described to Kratz in detail how the faculty and administration at NYAA had shunned her and refused to help her with recommendations and other support ever since she supported the other students and complained about her own experience as a victim of Schuman's sexual harassment. SAC ¶ 43. According to the Plaintiff, Kratz did not take adequate action to stop the sexual harassment or acts of retaliation against the Plaintiff, and Kratz's failure to take adequate corrective action emboldened Schuman and the

other faculty members who were retaliating against the Plaintiff. SAC ¶ 44.

After the Plaintiff told Kratz in detail how Schuman had sexually harassed her, Schuman continued to engage in sexual harassment at NYAA. SAC ¶ 45. Moreover, after the Plaintiff told Kratz about the acts of retaliation against her, faculty and staff at the school continued to shun the Plaintiff and deprive her of the benefits she had paid for and was promised as a student and alumna of the school. SAC ¶ 46. Bowland told the Plaintiff that she could no longer help her due to the Plaintiff's sexual harassment claims against Schuman. SAC ¶ 47. In an email to the Plaintiff rejecting her request for a recommendation, Bowland said, "I have never turned down a student I loved, as I did you, in 27 years of teaching. But the fact that you piled on to hurt Wade, makes it impossible for me to help you." SAC ¶ 47.

As relevant on this motion, Plaintiff further alleges that she and Defendant Academy entered into a valid and binding contract, and that Plaintiff substantially performed all of her duties and obligations under the contract, including by paying monetary consideration to Defendant Academy. SAC ¶¶ 72-73. In return for the monetary consideration paid by Plaintiff, the

Academy made specific promises to Plaintiff, including agreeing: (a) to provide Plaintiff with an educational environment free of sex discrimination in all programs and activities, including academic programs and school-sponsored activities on an off campus; (b) to provide Plaintiff with an educational environment free of sexual harassment; (c) to respond promptly to complaints of sexual harassment, including unwelcome advances and sexist comments, whether they occurred in a single episode or were part of a recurring pattern of behavior; (d) to take immediate action to eliminate sexual harassment, prevent its recurrence, and address its effects; (e) to designate a Title IX coordinator who is trained and experienced to address complaints of sex discrimination, including helping victims navigate the process and seek remedies; (f) not to retaliate against anyone who participated in the process of reporting or attempting to remedy sexual harassment or discrimination; and (g) to provide career services to Plaintiff, including strong job placement support. SAC ¶ 74.

Plaintiff alleges that the alleged promise to provide career services to Plaintiff, including strong job placement support, was set forth and communicated to Plaintiff in Defendant Academy's official student handbook (the "Student Handbook") and on its official website (the "Website"). SAC ¶

75. The other alleged promises described above were set forth
and communicated to Plaintiff on Defendant Academy's Website.
SAC ¶ 75. Plaintiff alleges Defendant Academy breached its
contract with Plaintiff by failing to perform the contractual
duties and obligations descried above. SAC ¶ 76.

As a direct and proximate result of the Defendants'
conduct, the Plaintiff has allegedly suffered damages in excess
of $75,000, exclusive of interest and costs. SAC ¶ 50.

## III. **The Applicable Standard**

On a Rule 12(b)(6) motion to dismiss, all factual
allegations in the complaint are accepted as true and all
inferences are drawn in favor of the pleader. *Mills v. Polar
Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint
must contain "sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially
plausible when "the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663
(quoting *Twombly*, 550 U.S. at 556). In other words, the factual

11

allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

# IV. The Defendant's Motion to Partially Dismiss Plaintiff's SAC is Granted in Part, and Denied in Part

## a. Defendants Academy's Motion to Dismiss Plaintiff's Breach of Contract Claim is Granted in Part, and Denied in Part

Defendant Academy has moved to dismiss Plaintiff's breach of contract claim on the basis that Plaintiff has failed to plead the existence of a contract, a fundamental element of such a claim. Def.'s Br. 7. Plaintiff argues that she has adequately alleged that such promises were made by the Academy by way of the Student Handbook and the Website, and that she has alleged these promises with sufficient specificity to survive a motion to dismiss. Pl.'s Br. 15.

"Generally, New York State courts have permitted a student to bring a breach of implied contract action against an institution of higher education," but first, such "a student must identify specific language in the school's bulletins, circulars, catalogues and handbooks which establishes the particular 'contractual' right or obligation alleged by the student in order to make out an implied contract claim." *Keefe v. New York Law Sch.*, 25 Misc. 3d 1228(A), 906 N.Y.S.2d 773 (Sup. Ct. 2009), *aff'd*, 71 A.D.3d 569, 897 N.Y.S.2d 94 (2010)

13

(noting that "[o]nly specific promises that are material to the student's relationship with the school can establish the existence of an implied contract"); *see also Sweeney v. Columbia Univ.*, 270 A.D.2d 335, 336 (2d Dep't 2000) (citing *Prusack v. State of N.Y.*, 117 A.D.2d 729, 730, 498 N.Y.S.2d 455 (2d Dep't 1986) (alteration omitted) ("The rights and obligations of the parties, as contained in the university's bulletins become a part of the parties' contract.").

       Here, Plaintiff has alleged that the Academy set forth certain promises to its students in the Student Handbook and the Website, which broadly fall into three categories: (1) to provide career services to plaintiff, including strong job placement support; (2) to provide an educational environment free of sex discrimination and sexual harassment; and (3) to not retaliate against those who report sex discrimination or sexual harassment. SAC ¶¶ 74-75. Plaintiff further specified in the SAC that the Academy promised:

   a)   to provide plaintiff with an educational environment
        free of sex discrimination in all programs and
        activities, including academic programs and school-
        sponsored activities on and off campus;

   b)   to provide plaintiff with an educational environment
        free of sexual harassment;

   c)   to respond promptly to complaints of sexual
        harassment, including unwelcome advances and sexist

14

comments, whether they occurred in a single episode or
were part of a recurring pattern of behavior;

d)   to take immediate action to eliminate sexual
     harassment, prevent its recurrence, and address its
     effects;

e)   to designate a Title IX coordinator who is trained and
     experienced to address complaints of sex
     discrimination, including helping victims navigate the
     process and seek remedies;

f)   not to retaliate against anyone who participated in
     the process of reporting or attempting to remedy
     sexual harassment or discrimination;

g)   to provide career services to plaintiff, including
     strong job placement support.

SAC ¶ 74.


As demonstrated by the above references to Plaintiff's

allegations, Plaintiff has listed certain specific promises

relating to the alleged rights and obligations of the parties,

and has pointed to the documents where such promises can be

found. Accordingly, Plaintiff has identified a contract with the

school sufficient to satisfy the first element of this inquiry.[1]

*See Vill. Cmty. Sch. v. Adler*, 124 Misc. 2d 817, 819, 478

N.Y.S.2d 546, 548 (N.Y. Civ. Ct. 1984) (permitting breach of

---

[1]      Defendant argues that Plaintiff's breach of contract
claim fails simply by way of Plaintiff not citing exact, quoted
language from either the Student Handbook or the Website in her
allegations. Def.'s Br. 7. However, Defendant provides no case
law supporting the notion that Plaintiff must quote exact
language in order to properly state a claim for breach of
contract. As such, this contention is rejected.

contract counterclaim because defendant identified promises by the school for specific services, including that the school possessed a specialized faculty capable of identifying and individually treating children with learning disabilities); *cf. Keefe*, 25 Misc. 3d 1228(A), at *1 (granting motion to dismiss where student-plaintiff "fail[ed] to point to any document or communication that [gave] rise to a promise which [the school] . . . breached."); *Gertler v. Goodgold*, 107 A.D.2d 481, 485, 487 N.Y.S.2d 565, 569 (1st Dep't), *aff'd*, 66 N.Y.S.2d 946, 498 N.Y.S.2d 779 (1985) (dismissing a faculty member's breach of contract claim because the complaint failed to allege a contract through which the university ever "expressly, by contract or otherwise, obligated itself to provide the amenities plaintiff claims").

Second, to survive a motion to dismiss, a student must identify promises made by the school "to provide for certain specified services." *See Ansari v. New York Univ.*, No. 96 Civ. 5280 (MBM), 1997 WL 257473, at *3 (May 16, 1997); *see also Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 92, 454 N.Y.S.2d 868, 873 (2d Dep't 1982) (holding that "if the contract with the school were to provide for certain specified services, . . . and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable.").

Courts have found that "certain specified services" covers those "services . . . specifically designated" by the school to students, as well as "discrete promises . . . relating to the incidents of the forthcoming education." *Id.* Such promises that have been found to survive on a motion to dismiss have included the provision of a designated number of hours of instruction, *Ansari*, 1997 WL 257473, at *3 (quoting *Paladino*, 89 A.D.2d at 92), state-of-the-art facilities, *id.*, and supervision by field supervisors, *Clarke v. Tr. of Columbia Univ. of City of N.Y.*, No. 95 Civ. 10627 (PKL), 1996 WL 609271, at *1 (S.D.N.Y. Oct. 23, 1996).

Critically, allegations constituting "general statements of policy" or "broad pronouncements of . . . compliance with existing anti-discrimination laws" do not fall under the umbrella of a school's promises for "specified services" upon which a breach of contract claim may rest. *See Ward v. N.Y. Univ.*, No. 99 Civ. 8733 (RCC), 2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000), at *4. Moreover, schools may not be held accountable for what has been informally termed "educational malpractice," or in other words, for allegedly failing to meet a student's educational needs. *See Andre v. Pace Univ.*, 170 Misc. 2d 893, 896, 655 N.Y.S.2d 777, 777 (2d Dep't 1996) ("[T]he courts have consistently declined to entertain

actions sounding in 'educational malpractice,' although quite possibly cognizable under traditional notions of tort law, as a matter of public policy.").

The following examples illustrate the nuances of this element. For instance, in *Ward*, 2000 WL 1448641, at *4, the court dismissed plaintiff's breach of contract claim against the school because the allegedly-promised services "actually [were] more akin to general statements of policy." Ward had alleged that defendants had promised, and breached, the following: "i) to provide a great learning environment for adult students; ii) to respect adult students and treat them with respect; iii) to not discriminate against adult students; iv) to provide supervision and teaching by honest and unbiased instructors; and v) to provide and to follow guidelines for student treatment." *Id.* The court elaborated that "virtually all of the promised services that Ward cites are broad pronouncements of the University's compliance with existing anti-discrimination laws, promising equitable treatment of all students," and that such allegations may not form the basis of a breach of contract claim. *Id.*

Likewise, in *Andre*, 170 Misc. 2d 893, 898, plaintiff-students asserted the defendant-university had breached its

contract by teaching a computer programming course at an advanced level, despite the professor beforehand having assured plaintiff-students that their math background would be sufficient for the course. The court held that, because plaintiffs did not allege defendant's "fail[ure] to meet its contractual obligation to provide certain specific services, such as a designated number of hours of instruction," but rather challenged "the propriety and efficacy of the . . . textbook actually chosen and the methodology employed to teach the . . . programming language," the claim must be dismissed. *Id.* at 898. *See also Paladino*, 89 A.D.2d at 92, (holding that "[t]he quality of the education and qualifications of the teachers employed by the . . . school are concerns not for the courts, but rather for the State Education Department and its commissioner.").

By contrast, in *Ansari*, 1997 WL 257473, at \*1, \*3, the plaintiff filed a class action in breach of contract against defendant-college of dentistry on the basis that the school promised in promotional literature to provide students with "state-of-the-art facilities, faculty tutor-advisors, appropriate recognition upon completion of the program, overviews of the latest techniques, program activities from 9:00 A.M. to 4:00 P.M. every day, and membership in the [American

Association of Orthodontics]." The court held that "[a]lthough defendants may challenge plaintiff's interpretation of those promises, they are promises for specified services." *Id.*, at *3. *See also Adler*, 124 Misc. 2d at 819 (denying motion to dismiss counterclaims where the mother of a disabled student alleged that the school "promised to detect learning deficiencies and to provide the necessary tutorial and guidance services, but failed to do so" because the school "effectively waived the implementation of competency testing and other educational tools as a discretionary measure and made it a requirement for full contract performance.").

        Here, Plaintiff has identified several alleged promises made by Defendant Academy, some of which were "general statements of policy" or "broad pronouncements of . . . compliance with existing anti-discrimination laws," and others for "certain specified services." As to the allegations constituting only general pronouncements of policy, Defendant's motion to dismiss is granted:

   a)  to provide plaintiff with an educational environment free of sex discrimination in all programs and activities, including academic programs and school-sponsored activities on and off campus;

   b)  to provide plaintiff with an educational environment free of sexual harassment;

     f)    not to retaliate against anyone who participated in
            the process of reporting or attempting to remedy
            sexual harassment or discrimination

SAC ¶ 74. The above alleged promises mirror those dismissed in
*Ward*, 2000 WL 1448641, at *4, for being "more akin to general
statements of policy." Specifically, here, the alleged promises
"to provide plaintiff with an educational environment free of
sex discrimination . . ." and "to provide plaintiff with an
educational environment free of sexual harassment" are analogous
to the dismissed promises in *Ward* "to provide a great learning
environment for adult students" and "to respect adult students
and treat them with respect." *See* SAC ¶ 74; *Id.* Moreover, the
alleged promise made by Defendant Academy here "not to retaliate
. . ." parallels that dismissed in *Ward* "to not discriminate . .
. ." *See id.* These three allegations may not form the basis of a
breach of contract claim as they are simply "broad
pronouncements of the University's compliance with existing
anti-discrimination laws." *Id.* Accordingly, Defendant's motion
is granted in part as to these allegations.


       Meanwhile, Plaintiff has also identified promises made
by the Academy that qualify as "certain specified services":
     c)    to respond promptly to complaints of sexual
            harassment, including unwelcome advances and sexist
            comments, whether they occurred in a single episode or
            were part of a recurring pattern of behavior;

d) to take immediate action to eliminate sexual
harassment, prevent its recurrence, and address its
effects;

e) to designate a Title IX coordinator who is trained and
experienced to address complaints of sex
discrimination, including helping victims navigate the
process and seek remedies;

g) to provide career services to plaintiff, including
strong job placement support.

SAC ¶ 74. Defendant's assertion "to designate a Title IX
coordinator who is trained and experienced to address complaints
of sex discrimination" is a clear and plain statement of a
specific service to be provided by the school comparable to the
promise of a "designated number of hours of instruction." *See*
*Andre*, 170 Misc. 2d at 898. Next, Defendant Academy's assertions
"to respond promptly to complaints of sexual harassment . . .,"
"to provide career services to plaintiff, including strong job
placement support," and "to take immediate action to eliminate
sexual harassment, prevent its recurrence, and address its
effects" mirror the promises made by the school in *Adler* "to
detect learning deficiencies, and to provide the necessary
tutorial and guidance services." *See Adler*, 124 Misc. 2d at 819.
In making each of the above assertions via the Student Handbook
and/or the Website, Defendant Academy put itself out as an
entity that would act in particular ways in certain situations,
and as such, made specific, concrete promises. As such, the
Academy stated that it would engage in actual, finite promises

of action, and Plaintiff has sufficiently alleged as such to withstand dismissal on this motion.

Finally, "to state a valid claim for a breach of contract, a plaintiff must state when and how the defendant breached the specific contractual promise." *Radin*, 2005 WL 1214281, at *10; *see also Chira v. Columbia Univ.*, 289 F. Supp. 2d 477, 485 (S.D.N.Y. 2003) ("[B]ald assertions and conclusory allegations that the University's rules or procedures were not followed, do not state a valid claim."); *accord Gally*, 22 F. Supp. 2d at 207 ("[T]he mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.").

Here, Plaintiff has adequately alleged when and how Defendant Academy has breached each of the four specific promises noted above. First, as to the promise "to provide career services," Plaintiff has alleged this promise was breached by Defendant "denying her the career services and strong job support it is contractually obligated to provide, including by refusing to provide her with references and recommendations that are essential to obtaining employment in the art world, and by discouraging her from attending and participating in NYAA activities." SAC ¶ 4. Plaintiff has

further alleged that she was "shunned by NYAA faculty and denied all support," SAC ¶ 5, and that "president, defendant David Kratz, discouraged plaintiff from attending NYAA events. The [Academy's] alumni association stopped sending email [sic] to plaintiff even though she had previously been elected Secretary of that organization. Defendants stopped making plaintiff aware of [Academy] functions, art shows, and networking events that could help her find employment as an artist," SAC ¶ 42. *See Ansari*, 1997 WL 257473, at *3 (denying dismissal, and noting that "[a]lthough defendants may challenge plaintiff's interpretation of those promises, they are promises for specified services" such that the breach of contract claim may proceed).

Next, Plaintiff alleged breach of the Academy's promises "to respond promptly to complaints of sexual harassment . . ." and "to take immediate action to eliminate sexual harassment . . ." by asserting that "Kratz did not take adequate action to stop the sexual harassment or acts of retaliation against plaintiff," and that "[h]is failure to take adequate corrective action emboldened Schuman and the other faculty members who were retaliating against plaintiff." SAC ¶ 44. Plaintiff alleged that "[a]fter plaintiff told Kratz in detail how Schuman had sexually harassed her, Schuman continued to

engage in sexual harassment at NYAA, including by grabbing a female alumna and pulling her onto his lap." SAC ¶ 45. These allegations are sufficient to meet the third element of this inquiry. *See Papelino*, 633 F.3d at 94 (holding that allegations that college failed to investigate complaint of sexual harassment were sufficient to state a claim for breach of contract).

Finally, in response to Defendant Academy's promise "to designate a Title IX coordinator . . .," Plaintiff has alleged that Defendant failed to perform this and other contractual duties and obligations as set forth on the Website. SAC ¶ 76. *See also Adler*, 124 Misc. 2d at 819 (denying motion to dismiss breach of contract claim where plaintiff alleged that the school agreed to detect learning deficiencies and to provide the necessary tutorial and guidance services, and plaintiff alleged that the school failed to do so).[2]

---

[2]     The Court's decision to permit the Plaintiff to proceed in part on the breach of contract claim "in no way suggests that [the] court has any view, one way or the other, on the likely accuracy of what Plaintiff has alleged . . . . The role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed." *See Bailey v. N.Y. Law Sch.*, No. 16 Civ. 4283 (ER), 2017 WL 835190, at *7 n.8 (citing *Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016)).

## V. Conclusion

For the foregoing reasons, the Defendant's motion to dismiss is granted in part, and denied in part.

It is so ordered.

**New York, NY**
**July /7, 2018**

ROBERT W. SWEET
U.S.D.J.

26